UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

| | |
|---|---|
| **In re:** ) | |
| ) | |
| **JEFFREY A. HRUBY,** ) | |
| ) | |
| **Debtor.** ) | |
| ) | **Case No. 14-11849 HRT** |
| **MIDWEST MOTOR SUPPLY** ) | **Chapter 13** |
| **COMPANY, INC. d/b/a Kimball Midwest,** ) | |
| ) | |
| **Movant,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **JEFFREY A. HRUBY,** ) | |
| ) | |
| **Respondent.** ) | |

**ORDER ON MOTION FOR RELIEF FROM STAY**

    This case comes before the Court on the *Motion by Midwest Motor Supply for (I) Relief from the Automatic Stay; and (II) Waiver of Stay* (docket #29) (the "Motion").

    The Movant seeks relief from stay in order to continue its prosecution of a civil action it filed against the Debtor and a related company captioned *Midwest Motor Supply Company, Inc., d/b/a Kimball Midwest v. Jeff Hruby, et al.*, Case No. 13CV012440 (the "Litigation"). The Litigation was filed in the Court of Common Pleas, Franklin County, Ohio (the "State Court"). Movant requests relief from the automatic stay for the sole purpose of obtaining injunctive relief against the Debtor and not for the purpose of pursuing the damages claims it has asserted in the Litigation.

    Under 11 U.S.C. § 362, in relevant part,

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
> (1)    for cause, including the lack of adequate protection of an interest in property of such party in interest;

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 14-11849 HRT

>   (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>   (A) the debtor does not have an equity in such property; and
>   (B) such property is not necessary to an effective reorganization;
>   . . . .

11 U.S.C. §§ 362(d)(1) & (2).

The Court conducted a preliminary hearing on April 29, 2014, and heard offers of proof from counsel. At the conclusion of the preliminary hearing, the Court took the matter under advisement to determine whether or not there is a necessity for a final hearing.

Following a preliminary hearing on a motion for relief from stay, the Court must grant the requested relief unless it is able to conclude that "there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of [a] final hearing." 11 U.S.C. § 362(e)(1). Because the Motion does not concern property[1] and there is no issue of equity, *see* 11 U.S.C. § 362(g)(1), the Debtor bears the burden of proof on all issues in this matter. 11 U.S.C. § 362(g)(2). Upon consideration of the parties' offers of proof and exhibits offered at the preliminary hearing, the Court finds that it may rule based on the parties' offers of proof and that a final hearing is unnecessary.

## I. FACTUAL BACKGROUND

1. On February 24, 2014, the Debtor and his company, Industrial Supplies of the Rockies, LLC (Case No. 14-11851), filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code.

2. Prepetition, from March 17, 2003, to November 11, 2013, Movant employed the Debtor as a sales representative pursuant to the an Employment Agreement (the "Agreement").

---

[1] It is conceivable that the injunctive relief that the Movant seeks in the State Court may touch property interests such as client lists or confidential manuals. But any property interest the Debtor possessed on the petition date and did not claim as exempt property is property of the Debtor's chapter 7 bankruptcy estate. Any such property interests are under the exclusive control of the Chapter 7 Trustee who did not object to the Motion. As a consequence, the stay may be lifted with respect to any property interest under the Trustee's control. Property interests that are under the Debtor's control are limited to exempt pre-petition interests and property interests acquired post-petition. The Court is satisfied, from its review of the Debtor's schedules and from the parties' offers of proof, that no property interest of the Debtor's that is protected by the automatic stay is subject to the Movant's State Court claims for injunctive relief.

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 14-11849 HRT

3. Paragraphs 5, 6, and 7 of the Agreement contain restrictive covenants (the "Covenants") and are set out in full in the Appendix attached hereto:
   (a) Paragraph 5 is a Covenant Not to Compete. There, the Debtor agreed generally that, during his employment with the Movant and for two years thereafter, he would not work for a business that competes with the Movant or sells products that compete with Movant's products.
   (b) Paragraph 6 is a No Solicitation or Service provision. There, the Debtor agreed generally that, during his employment with the Movant and for two years thereafter, he would not solicit or divert Movant's customers or employees in favor of a competing business.
   (c) Paragraph 7 is a Confidentiality provision. There, the Debtor agreed generally that, during his employment, he would keep the Movant's confidential information confidential and return such information to the Movant following his employment.

4. Paragraph 9 of the Agreement prescribes the remedies agreed to by the Debtor and the Movant in the event of a breach of the Covenants (the "Remedies"). The Remedies are set out in full in the Appendix attached hereto. The Remedies agreed to by the parties include both damages and injunctive relief.

5. Movant alleges that Debtor has breached the Covenants and the Movant's prepetition State Court Litigation pleads causes of action for both damages and injunctive relief with respect to Debtor's alleged breach of the Covenants.

6. Paragraph 12, Subparagraph I, of the Agreement contains a choice of law provision wherein the Debtor agrees that the Agreement shall be construed under Ohio law and that any actions brought concerning the Agreement will be venued in Franklin County, Ohio.

7. The Debtor filed his petition under chapter 7 prior to the State Court taking any action on Movant's request for preliminary injunction and prior to filing his answer in the State Court Litigation.

## II. DISCUSSION

A. Do the Movant's Claims for Injunctive Relief Constitute Dischargeable Debts?

The initial question is whether the Movant's rights under the Covenants constitute a claim under 11 U.S.C. § 101(5)(B) that is a dischargeable debt in the Debtor's bankruptcy proceeding. That question is not necessarily dispositive but, if Movant's claims for injunctive

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 14-11849 HRT

relief in the State Court Litigation amount to dischargeable debts, its case for relief is hardly compelling.

The Court concurs with the analysis of that question that appears in *Kennedy v. Medicap Pharmacies, Inc.*, 267 F.3d 493, 496-97 (6th Cir. 2001) and *In re Udell*, 18 F.3d 403, 406-408 (7th Cir. 1994). In *Kennedy*, the Court held that "The right to equitable relief constitutes a claim only if it is an alternative to a right to payment or if compliance with the equitable order will itself require the payment of money." 267 F.3d at 497.

The Court has reviewed the Covenants and the Remedies agreed to by the parties in the Agreement. It finds that the Agreement provides for both damages and injunctive relief in the event of Debtor's breach of the Covenants. The Court finds that the damages and the injunctive relief are cumulative and not alternative remedies. In addition to damages, under the Agreement, the Movant may be entitled to enjoin the Debtor from engaging in certain conduct prohibited by the Covenants. Should a court impose such injunctive relief, the Debtor could not comply with such an injunction by paying money. Therefore, under the rationale of *Kennedy* and of *Udell*, the injunctive relief that the Movant seeks in the State Court Litigation does not constitute a dischargeable claim in the Debtor's bankruptcy case.

B.  Jurisdiction Over the Underlying Dispute

The sole issue that is ripe for the Court's decision at this juncture is whether cause exists to lift the stay under 11 U.S.C. § 362(d)(1). But the Court must also consider its jurisdiction to hear the underlying dispute in the event it denies the Movant relief from stay. For the Court to deny relief in anticipation of deciding the underlying dispute in the course of the Debtor's bankruptcy is a different matter from denying relief without the ability to offer the parties an alternate forum for the resolution of their dispute.

Federal law does not give this Court any basis upon which to take jurisdiction of Movant's claims for injunctive relief against the Debtor. Under 28 U.S.C. § 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

> The term "arising under" describes those proceedings involving a cause of action created or determined by a statutory provision of title 11. Whereas "arising in" refers to administrative matters that are not based on any right expressly created by title 11 but would nevertheless have no existence outside of the bankruptcy case.

*In re ACI-HDT Supply Co.*, 205 B.R. 231, 234-35 (B.A.P. 9th Cir. 1997). By that definition, the Movant's claims for injunctive relief against the Debtor are not claims that arise under title 11 or

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 14-11849 HRT

arise in a case under title 11. The question is whether they are "related to" the Debtor's case. They are not.

>   The Tenth Circuit Court of Appeals has recognized that
>
>   "[T]he test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Although the proceeding need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate.

*In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)).

The Court finds, from the parties' offers of proof, that the injunctive relief requested by the Movant is not a matter that impacts the administration of the bankruptcy estate. The injunctive relief that the Movant seeks is unquestionably intended to alter the Debtor's " rights, liabilities, options, or freedom of action," *Id*., but, because this is a case under chapter 7, the relief requested against the Debtor can have no substantive impact on administration of his bankruptcy estate.

The petition date, February 24, 2014, was the watershed date with respect to matters that are involved in administration of the bankruptcy estate. The Chapter 7 Trustee, who did not object to the Movant's Motion, controls the property of the estate and, to the extent that the estate contains non-exempt property that she can administer, she will use those assets to pay allowed pre-petition claims and expenses of administration. The Debtor plays no substantive role in the administration of the estate.[2] Thus, whether or not the Movant's prepetition Agreement with the Debtor entitles it to enjoin his future activities, that is not a matter that impacts the Trustee's administration of the bankruptcy estate.

The fact that, if this Court were to deny relief from stay at this juncture, it does not have jurisdiction to adjudicate the underlying dispute weighs in favor of granting relief. In the absence of the Court's ability to offer the parties an alternative forum to adjudicate their dispute, denial of relief merely delays the proceedings that have already been commenced in the Ohio

---

[2] The role a debtor plays in estate administration is incidental. A debtor must turn over property of the estate to the trustee and cooperate with the trustee as necessary to enable the trustee to perform her duties . . . . 11 U.S.C. §§ 521(a)(3) & (4).

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 14-11849 HRT

State Court. The net result is delay for the sake of delay only because the parties at some point will have to return to Ohio to resolve their dispute.

### C. *Curtis* Factors

In cases where a movant seeks relief from the automatic stay under 11 U.S.C. § 362(d)(1) for cause to continue litigation in another forum, the Court routinely uses the list of considerations suggested in the case of *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984). Because a finding of cause under § 362(d)(1) for lifting the stay is always a case by case determination, the factors listed in *Curtis* assist the Court in focusing its inquiry. The list is not exhaustive. A court may always consider other factors in making its determination. Moreover, in any given case, a court may find only a few of the *Curtis* factors to be relevant. *Curtis* suggests the following factors to be considered in a case of this type:

(1) Whether the relief will result in a partial or complete resolution of the issues.
(2) The lack of any connection with or interference with the bankruptcy case.
(3) Whether the foreign proceeding involves the debtor as a fiduciary.
(4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.
(5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.
(6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.
(7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.
(8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).
(9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).
(10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties.
(11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.
(12) The impact of the stay on the parties and the "balance of hurt."

*Id*. at 799-800.

Relief from stay will not result in complete relief (factor #1) because, as the Court will explain more fully below, the Ohio State Court cannot address the issue of injunctive relief with respect to the Covenant Not to Compete while the automatic stay remains in effect. That fact weighs against granting relief.

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 14-11849 HRT

Proceedings in the State Court would not interfere with the bankruptcy case (factor #2). This case was filed as a liquidation case under chapter 7. The automatic stay as to property of the estate remains in place as to whatever property that the Trustee has not abandoned so long as the estate remains open. 11 U.S.C. § 362(c)(1). However, the Trustee has not objected to Movant's relief. Under the circumstances, the Court sees no potential for the Ohio State Court Litigation to substantively interfere with administration of the Debtor's bankruptcy estate because the Debtor's role in estate administration is incidental at most. This factor weighs in favor of granting relief.

Allowing the dispute to be resolved in the forum where it is currently pending will not prejudice the rights of creditors or other parties in interest (factor #7). This is a chapter 7 case. Because the Debtor has no substantive role in estate administration, the rights of creditors and other parties to this bankruptcy proceeding are not prejudiced by allowing the matter to continue in Ohio concurrently with the Trustee's administration of the bankruptcy estate. The creditors' particular interest is in the liquidation and distribution of property of the bankruptcy estate. That property is not involved in the State Court Litigation. This factor weighs in favor of relief.

The interest of judicial economy and the expeditious and economical determination of litigation for the parties (factor #10) weighs in favor of relief. The Court does not have the jurisdiction to offer the parties an alternate forum to resolve the disputes that are the subject of this Motion. Denying relief cannot serve any interest of judicial economy.

Likewise a balancing of the impact on the parties (factor #12) favors relief. Movant has a strong and immediate interest in enjoining further violation of the parties' Agreement. The Debtor argues his "fresh start" is in jeopardy. But he takes too broad a view of the bankruptcy fresh start. "Systems of bankruptcy are designed to relieve the honest debtor from the weight of indebtedness which has become oppressive, and to permit him to have a fresh start in business or commercial life, freed from the obligation and responsibilities which may have resulted from business misfortunes." *Wetmore v. Markoe*, 196 U.S. 68, 77 (1904). In *Wetmore*, the debtor's fresh start did not relieve him of his nondischargeable prepetition domestic support obligations. *Id*. Here the Debtor will receive a fresh start by being relieved of dischargeable debts incurred prepetition. But it does not relieve him of responsibility for obligations that are not subject to discharge and certainly does not relieve him of responsibility for his postpetition actions. The Debtor's only interest is to delay the inevitable adjudication of the merits of the Movant's claims in the State Court.

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 14-11849 HRT

D. *In re Gindi* – Likelihood of Success on the Merits

*1. In re Gindi*

In the case of *Chizzali v. Gindi (In re Gindi)*, 642 F3d 865 (10th Cir. 2011) *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F3d 495 (10th Cir. 2011), the movant sought relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1) in order to pursue an appeal of a state court garnishment order in the Colorado Court of Appeals. The bankruptcy court denied relief under § 362(d)(1) and the bankruptcy appellate panel affirmed. The Tenth Circuit held "that the bankruptcy court should have lifted the stay under § 362(d)(1) *only if* [the movant] showed that his appeal was likely to succeed." *Id*. at 873 (emphasis added). According to the court:

> This holding dooms [the movant's] argument under § 362(d)(1). The issue that [the movant] seeks to pursue in the Colorado Court of Appeals is the propriety of the state trial court's order setting aside the entry of default against Bank of the West. We see little chance that the Colorado Court of Appeals would reverse that order.

*Id*. Thus, based *solely* on its determination that the movant was unlikely to succeed on the merits of his appeal, without considering any other factors, the court held that the movant was not entitled to relief for cause under § 362(d)(1). On the matter of the multi-factor tests, such as the *Curtis* factors, the Tenth Circuit said "[w]e leave for another day whether to adopt an all-inclusive test incorporating other factors." *Id*.

A literal reading of *Gindi*'s language – that relief should have been granted *only if* the movant had made a showing of a likelihood of success – suggests, in cases of this type, a finding that the movant has shown it is likely to succeed in the underlying litigation is a condition precedent to lifting the stay.

That kind of literal reading would go too far. Certainly, a literal reading of *Gindi*'s statement that the movant must make that showing cannot have been the *Gindi* court's intent because 11 U.S.C. § 362(g) plainly places the burden of proof on the party opposing relief. More importantly, likelihood of success on the merits is irrelevant in many cases where relief has only an incidental impact on the debtor. Some examples would be cases where the debtor is a nominal party and an insurance carrier has assumed financial responsibility for the litigation; where the debtor acts only in a fiduciary role; or as a bailee for property of another. For a bankruptcy court to delve into the likelihood of success on the merits in cases where – win or lose – there can be no substantive impact on the debtor would constitute an unnecessary intrusion into the province of the court where the merits of the dispute will ultimately be decided.

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 14-11849 HRT

There are good reasons to avoid rendering an opinion on the merits of a dispute that will be decided in another forum – particularly a state court – in those cases where adjudication of the merits of the dispute will have little impact on the debtor. Federal courts owe a duty of comity to the state courts. Predicting the likely outcome of a state proceeding for the purposes of an independent federal proceeding may not necessarily violate that duty because it does not constitute an actual interference with state court jurisdiction. Nonetheless, the relationship between the federal and state courts and the federal courts' respect for state law dictates that federal courts should tread lightly when it comes to rendering opinions as to likely resolution of the factual and legal issues involved in a case to be decided in a state court forum and should do so only where required.

In this case, the Court's review of the *Curtis* factors weighs in favor of granting relief from stay. However, the granting of relief can be expected to directly and substantially impact the Debtor and the parties did address the likelihood of the Movant's success on the merits in their offers of proof. The Court finds, in this case, the holding in *Gindi* requires it to assess the likelihood that the Movant will succeed on the merits of its State Court litigation before granting relief.

As noted above, 11 U.S.C. § 362(g) provides that the party objecting to relief from stay bears the burden of proof with respect to all issues other than the debtor's equity in property. As a practical matter, that means that Movant's only burden is to make a *prima facie* showing. The burden then shifts to the Debtor to demonstrate that he is likely to be the successful party on the merits of the underlying State Court Litigation.

   *2. The Covenant Not to Compete*

The Court finds it unlikely that the Movant will prevail on any cause of action that deals with enforcement of the Covenant Not to Compete. The RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 carves out a narrow exception to the general rule that courts honor contractual terms providing that the law of a particular state will govern an agreement. Notwithstanding such agreement, in a case where the law of another state would apply if there were no choice of law agreement *and* the law of the chosen forum is contrary to a fundamental policy of the otherwise applicable state, then the parties' choice of law agreement will not be honored.

The Court believes the Ohio State Court will find that Colorado law would apply to the Agreement absent the parties' choice of Ohio law. Further, the Court believes that the Ohio State Court is likely to find that enforcement of the Covenant Not to Compete in the Agreement under Ohio law would contravene a fundamental policy of the state of Colorado. *King v. PA Consulting Group, Inc.*, 485 F.3d 577, 586 (10th Cir. 2007) ("Colorado . . . has a fundamental policy of voiding noncompete provisions that do not fall within one of the statutory exceptions.").

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 14-11849 HRT

Under RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187, where the parties to an agreement have chosen a particular jurisdiction's law to govern their agreement, in most cases that choice will be honored. Here the parties have chosen Ohio law to govern their agreement. Under narrow circumstances, that choice should not be honored. One of those circumstances is where enforcement of the parties' agreement

> would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(b). The Ohio courts follow § 187(2)(b) of the Restatement. *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 453 N.E.2d 683, 686 (Ohio 1983).

Under the Restatement, in the absence of a choice of law by the parties, courts look at the following factors to determine which state has the most significant relationship to the transaction under consideration.

(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2). Ohio has also adopted § 188 of the Restatement. *Gries Sports Enterprises, Inc. v. Modell*, 473 N.E.2d 807, 810 (Ohio 1984).

According to Debtor's uncontradicted offer of proof, the parties' Agreement was negotiated and signed in Colorado. The Debtor's sales territory was primarily located in Colorado and, to a lesser extent, in Wyoming. Thus the subject matter and place of performance of the contract were principally located in Colorado. The Debtor was domiciled in the state of Colorado during the time the Agreement was in force. The single factor that would weigh in favor of choosing Ohio law to govern the Covenant Not to Compete, in the absence of the parties choice of law provision, is the fact that Movant is domiciled there. Thus, under § 188, the Ohio State Court is likely to find that the state of Colorado has a more significant relationship to the Covenant Not to Compete than the state of Ohio.

Covenants not to compete that are reasonable in geographic scope and duration are enforced under Ohio law. *See Raimonde v. Van Vlerah*, 325 N.E.2d 544, 547 (Ohio 1975). Under Colorado law, however, such agreements are void. With exceptions not applicable here,

Page 10 of 13

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 14-11849 HRT

COLO. REV. STAT. § 8-2-113 provides that "[a]ny covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void." The Tenth Circuit has recognized that § 8-2-113 reflects a fundamental policy of the state of Colorado. *King*, 485 F.3d at 586. The Court believes it is likely that the Ohio State Court will find that the Covenant Not to Compete between the Movant and the Debtor is void under COLO. REV. STAT. § 8-2-113.

It is likely that the Ohio State Court would apply RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(b) and find that Colorado law applies to the Covenant Not to Compete and the provision is void under COLO. REV. STAT. § 8-2-113. The Court cannot, therefore, find that the Movant is likely to be successful on the merits of its claims against the Debtor on the Covenant Not to Compete. Under *Gindi*, the Court must deny Movant's request for relief from stay as to the Covenant Not to Compete.

### 3. The "No Solicitation or Service" Provision

Paragraph 6 of the Agreement is a No Solicitation or Service provision. There, the Debtor agreed generally that, during his employment with the Movant and for two years thereafter, he would not solicit or divert Movant's customers or employees in favor of a competing business.

The Movant's offer of proof contained highly specific information in support of its allegation that Debtor has violated the No Solicitation of Service provision. It offered exhibits quantifying substantial ongoing losses of sales to customers that the Debtor serviced when he was employed with the Movant and cross-referenced those losses with the Debtor's claims of increased sales that he made for his current employer. The Debtor's offer of proof did not refute the Movant's offer. Nor did Debtor refute Movant's evidence that, following his employment with the Movant, Debtor accessed Movant's computer files containing confidential customer information. The evidence offered by the Movant gives rise to the inference that Debtor utilized Movant's confidential customer information to actively solicit Movant's customers and that the activity is ongoing.

Colorado's statute declaring non-compete agreements to be null and void, COLO. REV. STAT. § 8-2-113, is a statute in derogation of the common law freedom of contract rules under which non-compete agreements are fully enforceable. Colorado construes such statutes strictly. *Henisse v. First Transit, Inc.*, 247 P.3d 577, 579 (Colo. 2011); *Cook v. Hager*, 3 Colo. 386, 389 (Colo. 1877). Nonetheless, where a court determines that a particular no solicitation clause is an agreement restraining competition, it will find that the agreement violates COLO. REV. STAT. § 8-2-113. *See, e.g. Phoenix Capital, Inc. v. Dowell*, 176 P.3d 835, 844 (Colo. Ct. App. 2007).

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 14-11849 HRT

A Colorado court would look at the substance, not merely the form, of the agreement. Where a court finds the solicitation is accomplished using the former employers's trade secrets, a Colorado court – or an Ohio court construing an agreement under Colorado law – will enforce the agreement, at least to the extent necessary to restrain the former employee's use of the former employer's trade secrets. *Id*. at 844; *Saturn Systems, Inc. v. Militare*, 252 P.3d 516, 526 (Colo. Ct. App. 2011).

After considering the parties' offers of proof, the Court believes that the Movant is likely to prevail on his cause of action requesting an injunction to prevent further violation of the No Solicitation or Service provision. This is a closer call. Nonetheless, Movant's unrefuted offer of proof sufficiently connects the Debtor's use of trade secrets with the solicitation of Movant's customers in violation of the No Solicitation or Service provision such that the Court believes that it is more likely than not that the Movant will prevail on the merits of this claim.

### 4. *The "Confidentiality" Provision*

Likewise with the Confidentiality provision. In that provision, the Debtor agreed to protect the movant's confidential information and to return it following the termination of his employment. The Confidentiality provision is enforceable under either Ohio or Colorado law and such enforcement contravenes no fundamental Colorado policy. COLO. REV. STAT. § 8-2-113(2)(b) (the restriction on enforcement of non-compete agreements not applicable to "[a]ny contract for the protection of trade secrets").

Movant's offer of proof included detailed information concerning the Debtor's post-employment access of the Movant's confidential customer information. The Debtor's offer of proof contained no denial of that unauthorized access. From those offers of proof, the Court finds that the Movant is likely to prevail on its cause of action seeking to enjoin the Debtor from any further violation of the Confidentiality provision.

E.  Waiver of Stay of Order under FED. R. BANKR. P. 4001(a)(3)

The Court will waive the fourteen day stay of this Order under Rule 4001(a)(3). The Movant has made a showing of cause for waiving the stay. It has presented evidence of ongoing violation of its rights under the Agreement that constitutes good cause for waiver of Rule 4001(a)(3).

### III.  CONCLUSION

In accordance with the above discussion, it is

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 14-11849 HRT

**ORDERED** that the *Motion by Midwest Motor Supply for (I) Relief from the Automatic Stay; and (II) Waiver of Stay* (docket #29) is GRANTED IN PART and DENIED IN PART. It is further

**ORDERED** that the Court GRANTS relief from the automatic stay to the Movant to the extent necessary for the Movant to seek enforcement of its rights to enjoin violations of the No Solicitation or Service provision (¶6) and the Confidentiality provision (¶7) of the parties' Employment Agreement in the Ohio State Court. It is further

**ORDERED** that the Court DENIES relief from the automatic stay with respect to enforcement of the Covenant Not to Compete (¶5) in the parties' Employment Agreement. It is further

**ORDERED** that Movant's request for waiver of the fourteen day stay of this Order under FED. R. BANKR. P. 4001(a)(3) is GRANTED.

Dated this __16th__ day of May, 2014.

BY THE COURT:

*Howard Tallman*

Howard R. Tallman, Chief Judge
United States Bankruptcy Court

ORDER ON MOTION FOR RELIEF FROM STAY – APPENDIX
Case No. 14-11849 HRT

# APPENDIX

**5.     Covenant Not to Compete.**  During the Employee's employment with the Company and for a period of two (2) years after the termination thereof the Employee shall not, directly or indirectly, individually or in concert with any other person or entity or through a corporation, partnership or other entity, or manage, operate, control, be employed by, work on behalf of, invest in, assist (financially or otherwise), provide advisory, consulting or other services for, participate in or be interested in or connected in any manner with the ownership, management, operation, promotion, or control of, any person, corporation, partnership, proprietorship or other business enterprise which is engaged. directly or indirectly, in a business which:

**A.**     competes directly or indirectly with the Company or the Company's employees, sales representatives or independent contractors with respect to their sales of Company products; or

**B.**     distributes or sells a Competing Product, in any city, town or place within the states in which the Employee's Area is located where the Company has conducted. currently conducts, or reasonably expects to conduct its business or where the Company's sales representatives and/or independent contractors have sold, currently sell, or reasonably expect to sell the Company's products.

The Employee further agrees and covenants that if the Employee violates this covenant during the two (2) year period following the termination of the Employee's employment with the Company, the terms of this covenant shall continue for an additional two (2) year period from the time that such violations cease or an injunction is entered by a court of competent jurisdiction ordering such violations to cease, whichever is earlier.

**6.     No Solicitation or Service.**  The Employee shall not, at any time during the term of the Employee's employment with the Company, or for a period of two (2) years following the termination of the Employee's employment with the Company, directly or indirectly, or in concert with any other person or entity, individually or through a corporation, partnership, or other entity, do any of the following:

**A.**     Solicit, divert or take away or attempt to solicit, divert or take away customers, clients or accounts of the Company, or call upon, communicate, advise, or consult with, write or respond to, or inform any customer, client or account of the Company, for the purpose of soliciting. selling, or recommending Competing Products where such customer, client or account was a customer, client or account previously contacted by, sold to, serviced or supervised by the Employee while employed by the Company.

ORDER ON MOTION FOR RELIEF FROM STAY – APPENDIX
Case No. 14-11849 HRT

      **B.**    Induce or attempt to induce any employee, sales representative or independent contractor or the Company to leave the Company's employ or association (or engage to act, directly or indirectly, as an employee, sales representative or independent contractor) any employee, sales representative or independent contractor of the Company within six (6) months following termination of the Employee's employment or association with the Company.

      **C.**    Suffer or permit the Employee's immediate family member to do anything set forth ln Paragraph 5 or this Paragraph 6.

The Employee further agrees and covenants that if the Employee violates this covenant during the two (2) year period following the termination of the Employee's employment with the Company, the terms of this covenant shall continue for an additional two (2) year period from the time that such violations ceases or an injunction is entered by a court of competent jurisdiction ordering such violations to cease, whichever is earlier.

    **7.**    **Confidentiality.**

      **A.**    Employee shall, at all times, keep all Confidential information confidential, and shall not use such information except while employed by the Company for the benefit of the Company in the course of the Employee's duties hereunder without regard to whether this Confidential Information would be considered not generally known by the public, material or important, by anyone not a party to this Agreement. The Employee here agrees to abide by the Company's determination that any information is Confidential Information and that the same is of a special and unique nature and value, important and material and that it gravely affects the effective successful conduct of the business of the Company and the Company's good will. The Employee further agrees that all Confidential Information is and shall remain the sole and exclusive property of the Company and that upon termination of their employment with the Company, all records, drawings., blueprints. manuals. letters, notes, reports, copies thereof and all other materials constituting Confidential Information, whether prepared by the Employee or others, will be left with the Company or if not then located on the Company's premises returned to the Company's principal offices within five (5) days of termination of employment.

      **B.**    Disclosure of any Confidential Information of Company shall not be prohibited if such disclosure is directly pursuant to a valid and existing order of court or other governmental body or agency within the United States provided, however, that (1) the Employee shall first have given prompt notice to Company of any such possible or prospective order (or proceeding pursuant to which any such order may result) and (2) Company shall have been afforded a reasonable opportunity to prevent or limit any such. disclosure.

. . . .

ORDER ON MOTION FOR RELIEF FROM STAY – APPENDIX
Case No. 14-11849 HRT

    **9.**     **Remedies.**

        **A.**     Injunctive Relief. The parties agree that a breach of the Restrictive Covenants may cause irreparable damage to the Company, the extent of which may be difficult to ascertain, and the award of damages may not be adequate relief, and consequently, the Employee agrees that, in the event of a breach or a threatened breach of the Restrictive Covenants, the Company may institute an action to compel the specific performance of the Restrictive Covenants, and that such remedy shall be cumulative, not exclusive, and shall be in addition to any other available remedies.

        **B.**     Accounting for Profits; Indemnification. The Employee covenants and agrees that, if the Employee shall violate any of the Employee's Restrictive Covenants under this Agreement, Company shall be entitled to an accounting and repayment of all profits, compensation, royalties, commissions, remunerations or benefits which the Employee directly or indirectly shall have realized or may realize relating to, growing out of or in connection with any such violation; such remedy shall be in addition to and not in limitation of any injunctive relief or other rights or remedies to which the Company is or may be entitled at law or in equity or otherwise under this Agreement. The Employee hereby agrees to defend. indemnify and hold harmless the Company against and in respect of: (1) any and all losses and damages resulting from, relating or incident to, or arising out of any misrepresentation or breach by the Employee of any warranty, covenant or agreement made or contained in this Agreement; and (2) any and all actions, suits, proceedings, claims, demands, judgments, costs and expenses (including reasonable attorney's fees) incident to the foregoing.

. . .

    **12.**     **Miscellaneous**

. . .

        **I.**     This Agreement shall be construed in accordance with Ohio Law.  The Employee agrees that: (1) Any action brought by the Employee or on the Employee's behalf, concerning, relating to or involving this Agreement, or any other Agreements entered into pursuant to this Agreement, must be venued in Franklin County, Ohio; and (2) Any action brought by the company, or on its behalf, concerning, relating to or involving this Agreement, or any other Agreements entered into pursuant to this Agreement, must be venued in Franklin County, Ohio.  The parties hereby consent to the jurisdiction of the state or federal courts in said county.

Appendix Page 3 of 3